Good morning, Your Honors. May it please the Court, my name is Don Lipmanson, attorney for Appellant Craig Bush. Your Honors, a plea is involuntary according to the Supreme Court North Carolina v. Alford unless it is both voluntary, a question of will, and an intelligent choice among the alternatives available to a defendant in a particular action. And this is, of course, a highly fact-driven and individual analysis. In a situation like we have here where the state court gives no rationale, we, you look to the settled federal law and look for clear error in the district court finding of facts and make a de novo review on the law. Here I believe we have two clear errors on the part of the district court. First, Mr. Bush did not have two entire hours in which to decide whether to plead or not. Ninety minutes of the negotiations, of the two-hour negotiations, were involved in back-and-forth between the district attorney and appellant's counsel. It's important to note that appellant was not driving these negotiations and he wasn't setting the terms. The other clear error, I believe, is that the district court did not adequately analyze or recognize the impact of the extreme methamphetamine abuse, the head injuries that appellant had suffered, and the social isolation. In other words, there wasn't an adequate assessment of the factors that go into a voluntary and intelligent plea. And if I may add, I would like to reserve three minutes for rebuttal. The plea was a thing to tip off the attorney that he is having mental problems? They, the attorneys had the two evaluations, competency evaluations. Very positive in favor of your client. But both of them clearly pointed out that the client had these serious methamphetamine addiction issues and. Well, usually what happens is they're tipped off and they don't get anything. They don't pull it. He'd have two doctors saying, followed up, and both of them said he's fine. Go ahead. But, Your Honor, the attorney. You get a third? Is that what you're supposed to do? Dr. Thompson, who was the defendant's expert at the hearing, at the evidentiary hearing on this matter, pointed it out. But counsel Tulanian, Mr. Tulanian, recognized that his client needed more time, told the district attorney very clearly that his client needed more time. And the district attorney, it appears from the record, wanted to grant that time. And yet his superior overruled him, I guess, for matters of office policy. This is, I believe, a situation. What was the situation in terms of the trial at that point, timing-wise? The jury was, had been dismissed for that day. And they were to come back the following morning. So the decision could have been deferred, which is what Mr. Bush and his attorney wanted, until first thing the next morning. It would have required the jury to come back as opposed to dismissing it that day. But given the scope and importance of this particular situation, it would not have been too much to ask the jury to return. The jury was to come back the following morning. You're not suggesting that he was under the influence of drugs at the time of the plea. Is that correct? Probably not directly. There's no evidence to that effect. Was he incarcerated at that time? He was incarcerated at that time. So one more, well, there's reality, but then, but the reality is, is that there's no evidence in the record of any meth impairment at the time of the plea, am I correct? Not, indeed, not at the time of the plea. But there is plenty of anecdotal evidence that methamphetamine addiction, the mental effects don't just dissipate if one has as long a history. This young man started at age 12 or 13 in his self-reporting, and that auto accident that Sutter Lakeside tested him for, he had meth in his blood at age 16. So there's no doubt that there's some independent verification of this meth addiction. The other problem with the plea, the Respondent raises the colloquy, fairly so. However, the colloquy does not address the question of whether Mr. Bush had adequate time to consider the plea. The colloquy is whether he had adequate time to consult with counsel. It's not the same thing. Furthermore, when Bush came up with this ambiguous I guess answer, it appears that the judge, presumably under the time pressures, shoehorned him to a yes or no answer, as opposed to asking what do you mean by that I guess. Had he said, had there been a little bit more inquiry, we would have had clear evidence that he was not ready to go forward with this plea. I'm missing something here. I thought the Rule 11 was very well done, met all of the standards we have, and he made a finding of fact as to the condition of your client. You're indicating that finding of fact was clearly erroneous? On the, yes, the Federal judge's finding of fact as to the- Voluntariness of the plea. Well, I would say that's more of a legal issue. The error of fact was the, in the- No, it isn't a legal issue. The issue he made is finding of fact, that it was voluntary. That's a finding of fact. We've treated it as such. I would view that as a mixed finding of fact in law. He has to take into consideration the various facts, which I believe were, some of which were overlooked. I don't think he gave adequate consideration to the fact that Dr. Thompson and the two examining competency doctors had addressed, that there were serious head injuries. Okay. Now, assume it's a finding of fact. You demonstrate that that finding of fact is clearly erroneous. What is there in this record? Not this should have been in it, or this might have happened, or whatever, but what in this record shows that that finding of fact of voluntariness was clearly erroneous? Dr. Thompson's statements that the head injuries, the methamphetamine, the social isolation, the lack of prior experience of this young man with the criminal justice system, and the fact that he had just turned 19, those precluded him from making a voluntary finding, from making a voluntary plea in such a short window of time. So that's the finding of, that's how you show the finding of fact is clearly erroneous? I believe so. Okay. I understand your argument. Does the previous plea discussion bear on the totality of circumstances here, that he'd been through this once with his attorney and presumably understood the, through that, you know, made a decision at that point not to plea? Is that factored into the totality? I believe that the fact that he had looked at the same decision right at the beginning of his incarceration and flat-out rejected it is of importance. I think that the fact that he didn't get this final, that this final offer, if you will, wasn't delivered to Mr. Bush until about 30 minutes before the, what was in fact the court-imposed deadline, even shorter than the prosecution's proposed deadline of 5 o'clock, of close of business, that indicates the lack of time in which to properly, in which to have the ability to reflect, and to have the ability to intelligently determine among these options. It is certainly conceivable that someone who's highly experienced in the criminal justice system, who'd been prosecuted a bunch of times before, could make a decision of this magnitude in 30 minutes if they didn't have the head injury, if they didn't have the meth addiction. But this combination of factors unique to this individual indicates that the plea was not knowing and intelligent and voluntary as it would have had to have been. Do you want to reserve the remaining time? Please. Thank you. May it please the Court, Doreen Jung appearing for Respondent Woodford. Appellant's sole certified claim is that his plea was involuntary. We submit that he fails to make the requisite showing that the State Appellate Court clearly misapplied established federal law. In this case, Appellant was given an entirely adequate amount of time to consider the plea. The record shows that this plea was broached as much as a year before his actual plea date when his first trial counsel suggested that he consider a 25 to life plea. The transcript of the State evidentiary hearing in this matter shows that the plea was broached as much as a week or days before the actual plea took place. At SCR 343, Stephen Tuanian clearly says that this is not something that just happened on one day. That's at the very top of the page. At SCR 327, the attorney says discussions took place for days prior to the time that the ultimate plea was entered. At SCR 418, they say that this plea was broached at the trial readiness conference as much as a week before the actual trial. At the time of the plea, the trial court took extensive measures to determine whether or not Appellant had enough time to consider the plea. He asked numerous questions in which he asked Appellant whether he had enough time to discuss this with attorneys, whether he had consulted with his attorneys fully and completely, and whether his plea was, in fact, voluntary and knowing. Appellant at all turns agreed that he did have enough time. This representation to the trial court is entitled to a strong presumption of verity. Appellant offers nothing that could challenge his representations to the trial court other than his transparently self-serving assertions that he now felt. Well, he offers a maybe. That seems to be the key here, isn't it? The maybe answer? I would represent to the court no. I would respectfully disagree and say that the trial court pressed Appellant for clarification, and he received that clarification. When Appellant said yeah, the trial court said, is that a yes? I just need to be sure. Defendant said yes, he did have enough time to discuss this with his attorneys. The trial court asked, are you pleading guilty freely and voluntarily? Defendant said yes. These representations are entitled to a strong presumption of verity. Appellant offers nothing that could challenge it. As to Appellant's claim that he was mentally impaired, simply put that has been repeatedly and consistently rejected by the psychiatrists, three of whom examined Appellant, even his own retained defense expert, brought to testify on his behalf at the State of Industry hearing, testified that he could find no major mental illness. I'm sorry, Your Honor? Yes. This is a habeas case, habeas appeal from the state court. That's correct, Your Honor. What's the burden of the defendant to show in order to get this reversed? He would have to show an unreasonable application of clearly established federal law. Or unreasonable determination of the facts, either of those. And I think that's what he's indicating here, that there's an unreasonable determination of the facts. But that would be the test we would apply? True, Your Honor. That's absolutely correct. Although I suppose the Court could actually also find that there was an unreasonable application. Theoretically, at least, the Court could examine the trial court's application of the involuntary and the standard. That's at least within this Court's purview, if not directly presented in this case. So in sum, if there are no further questions, I would submit. There is one other question, perhaps you could touch on, where the state court provides no basis for its decision to deny the habeas corpus petition. Does that change the test that we would apply in determining whether there's an unreasonable application? In this case, Your Honor, there is no written opinion, other than beyond the state court finding, the implied state court findings based on the evidentiary hearing, in which there is no written opinion. But there is an implied finding, a fact, in this case. After the evidentiary hearing, the denial of the habeas petition, after the state evidentiary hearing, constitutes an implied rejection of these claims and implied finding that they are, in fact, without merit. So the AEDPA standard deference still applies. This Court would not apply, I would suggest, some sort of de novo review to the factual determinations. Well, I'm speaking more literally towards our standard review. When the state court in its decision to deny habeas provides no basis for that decision, what do we do then? What's our standard review? I would respectfully suggest, Your Honor, that there is a basis, if not a written basis. There is certainly a basis for the court's finding. And I would simply suggest that AEDPA rules of deference still apply, and that am I answering Your Honor's question? Well, we have kind of a unique situation here, it seems to me, and I'm just trying to find out what your view on it is. To be perfectly honest, Your Honor, we did discuss this, and we weren't precisely sure what the answer to Your Honor's question would be, other than to say that AEDPA standards still apply. Thank you. I appreciate your candid response. Thank you. Is there any indication at the time of this that he was having this colloquy with the judge? Did he say anything that would suggest that he felt he needed more time to consider the matter? No, Your Honor. In fact, I would suggest to the Court that the courts that appellants express representations to the trial court clearly indicate the contrary. If there are no further questions, I'm prepared to submit. Thank you. Your Honors, in response to the claim that the plea had been discussed for several days ahead of time, it was not this particular plea offer that was discussed several days ahead of time. In the supplemental excerpts of the records at page 351, Mr. Tulanian makes clear that while there were most likely plea discussions ongoing, this particular plea was not raised, proposed, or anything like that prior to the date, prior to the Thursday on which the plea was entered. And elsewhere in the record, Mr. Tulanian said that the plea had been discussed for several days ahead of time. Can I just clarify one thing? This is a different plea than the one he originally rejected? This is the same, essentially the same. In terms of the terms, it was the same terms, correct? It appears to be essentially, although it's we're only relying on Mr. Bush's memory at a time he definitely was clearly meth-addled as to what the original plea was, or the original offer, which came in shortly after his arrest. Was there any negotiation about the time for acceptance, how much time he'd have to consider the matter? Yes, Your Honor. According to Mr. Tulanian, it appears that Senior Deputy Bruce Collins thought that more time was in order, went to his boss, Mr. Hedstrom, and was rebutted in the attempt to get more time for that. And I think what we're dealing with here is a circumstance where, although a defendant has no right to a plea bargain, if the prosecution sets terms that are so restrictive on the amount of time, we can arise in a situation where there's a constitutional violation, despite the prosecution's wish to make this proceed properly. They could have said no plea negotiations and avoided this entire circumstance. But the way that the district attorney's office there structured the amount of time available resulted in the deprivation of rights. Lastly, I think that the notion that there was no mental illness, that he was not impaired in any way, greatly overstates the fact. He did not have a major mental illness, but this methamphetamine addiction, years and years and years of it, all the examiners noted it, and Dr. Thompson testified as to the extremely – as to the great impact that it has on a person's thought processes and his ability to make rapid rational decisions. Mr. Bush was not in a position to make that sort of a decision, given his mental history of head injuries and the use of the drugs and the social isolation. No major mental illness, we would agree, but mental disorder that impaired his reasoning ability, yes. And it's specifically – that relates to an insufficient time to be able to make a decision of this magnitude in an informed way. Thank you. Thank you. I thank both counsel for your arguments. The case of Bush v. Woodford is submitted.
judges: Wallace, Cudahy, McKeown